UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUANE READE, DUANE READE INC., and DRI I, INC.,<br><br><br>Plaintiffs,<br><br>- v -<br><br>ALLIED TRADES COUNCIL; UNION MUTUAL FUND; IRVING HANS, IRVING KROOP, DONALD MERINO, HAROLD BANNER, BERTRAM GELFAND, and GEORGE MIRANDA, as Trustees of Union Mutual Fund; ALLIED WELFARE FUND; LOUIS KAPLAN; GERALD HERSKO-WITZ, BRUCE ROGERS, GEORGE MIRANDA, RUDOLPH PASCUCCI, STEPHEN CAMADECO, and ANTHONY GUIGLIANO as Trustees of Allied Welfare Fund; VACATION FRINGE BENEFIT FUND; and BRUCE ROGERS, GERALD HERSKOWITZ, GEORGE MIRANDA, JAMES CROWLEY, and HERMAN WOLFSON, as Trustees of the Vacation Fringe Benefit Fund,<br><br>Defendants. | **04-CV-3542 (BSJ)**<br><br>***ECF CASE*** |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ALLIED TRADES COUNCIL'S MOTION TO DISMISS

GROTTA, GLASSMAN & HOFFMAN, P.C.
650 Fifth Avenue, 22nd Floor
New York, New York 10019
(212) 315-3510

On the Brief:
Cheryl J. Weller, Esq.

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................. 3

PROCEDURAL HISTORY ................................................................................ 11

ARGUMENT .................................................................................................. 13

I.      PLAINTIFFS' LMRA SECTION 302(c)(5) CLAIM SHOULD NOT BE
        DISMISSED ......................................................................................... 13

        A.      Plaintiffs' §302 Claim is Not Time-Barred .................................... 13

        B.      Plaintiffs' §302 Claim is Not Barred by the Doctrines of Collateral
                Estoppel and *Res Judicata* ............................................................ 14

                1.      Collateral Estoppel ............................................................ 14

                2.      *Res Judicata* ..................................................................... 17

        C.      Plaintiffs Have Stated a Claim Upon Which Relief May Be
                Granted ...................................................................................... 19

                1.      Plaintiffs Have Stated a Claim Against the ATC ................. 19

                2.      Plaintiffs Can Obtain Equitable Relief Against the ATC ..... 19

                3.      Plaintiffs Have a Valid Claim Under LMRA Section 302(c)(5) .......... 20

                        a.      *Plaintiffs Have Adequately Alleged Violations of LMRA Section
                                302(c)(5)* ......................................................... 20

                                i.      *Basis for Claim Regarding Inequality of Voting* .......... 20

                                ii.     *Basis for Claim Regarding Appointment of Trustees* .... 20

                                ii.     *Basis for Claim Regarding Similarly Situated
                                        Employees* ................................................ 20

                        *302(c)(5) (Demisay)* ........................................................ 26

**<u>TABLE OF CONTENTS</u>** (Cont'd)

<u>**PAGE**</u>

b.      *Plaintiffs Have a Cause of Action Under LMRA Section*

II.    JOINDER OF THE NATIONAL LABOR RELATIONS BOARD AS A
       NECESSARY PARTY IS NOT REQUIRED ............................................................29

CONCLUSION.......................................................................................................................37

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

*Andrea Doreen Ltd. v. Building Material Local Union 282*,
   299 F. Supp. 2d 129 (E.D.N.Y. 2004) ...................................................................... 14, 15

*Artichoke Joe's v. Norton*,
   216 F. Supp. 2d 1084 (E.D. Cal. 2002), *aff'd*, 353 F.3d 712 (9th Cir. 2003), *cert.
   denied*, 125 S.Ct. 51 (2004) ...................................................................................... 35

*Associated Contractors of Essex County, Inc. v. Laborers International Union of North
America*,
   559 F.2d 222 (3d Cir. 1977)........................................................................................ 22

*Barninger v. National Maritime Union*,
   372 F. Supp. 908 (S.D.N.Y. 1974) ............................................................................. 13

*Benson v. Brower's Moving & Storage Inc.*,
   907 F.2d 310 (2d Cir.), *cert. denied*, 498 U.S. 982 (1990)........................................ 16

*Berdeguez v. United Brotherhood of Carpenters and Joiners of America*,
   1996 WL. 551722 (S.D.N.Y. Sept. 26, 1996)............................................................. 28

*Bodner v. Banque Paribas*,
   114 F. Supp. 2d 117 (E.D.N.Y.).............................................................................. 32, 34

*Boguslavsky v. Kaplan*,
   159 F.3d 715, 720 (2d Cir. 1998))............................................................................... 15

*Bona v. Barasch*,
   2003 WL. 1395932 (S.D.N.Y. March 20, 2003)
   *recons. sub nom. Martinez v. Barasch*,
   2004 WL. 1367445 (S.D.N.Y. June 16, 2004)........................................................... 7, 8

*Boucher v. Williams*,
   13 F. Supp. 2d 84 (D. Me. 1998)................................................................................ 21

*Bridges v. Blue Cross and Blue Shield Association*,
   889 F. Supp. 502 (D.D.C. 1995) ................................................................................. 32

*Burgos v. Hopkins*,
   14 F.3d 787 (2d Cir. 1994)...................................................................................... 15, 18

**TABLE OF AUTHORITIES** (Cont'd)

**PAGE**

*Caisse Nationale de Credit Agricole v. Bank of  Tokyo,*
    1997 WL. 282274 (S.D.N.Y. May 28, 1997)........................................................29, 33

*Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.,*
    56 F.3d 359 (2d Cir. 1995)..............................................................................14

*Central States v. Gerber Truck Services, Inc.,*
    870 F.2d 1148 (7th Cir. 1989)..........................................................................16

*ConnTech Devlopment Co. v. University of Connecticut Education Properties, Inc.,*
    102 F.3d 677 (2d Cir. 1996)...............................................................30, 31, 32

*Burger King Corp. v. American National Bank and Trust Co.,*
    119 F.R.D. 672 (N.D. Ill. 1988 .....................................................33, 34, 36

*Costello v. Lipsitz,*
    547 F.2d 1267 (5th Cir.), *cert. denied,* 434 U.S. 829 (1977)..........................23

*Dameron v. Sinai Hospital of Baltimore, Inc.,*
    595 F. Supp. 1404 (D. Md. 1984) .....................................................................14

*DeVito v. Hempstead China Shop, Inc.,*
    38 F.3d 651 (2d Cir. 1994)...............................................................................29

*Denver Metropolitan Association of Plumbing Heating Cooling Contractors v.*
*Journeyman Plumbers & Gas-Fitters Local No. 3,*
    586 F.2d 1367 (10th Cir. 1978).................................................................23, 24

*Duane Reade, Inc. v. Local 338,*
    3 Misc.3d 405, 777 N.Y.S.2d 231, *aff'd,* 11 A.D.3d 406, 784 N.Y.S.2d 505
    (1st Dep't 2004) ............................................................................................8

*Duane Reade Inc.,*
    342 N.L.R.B. No. 104 (Sept. 15, 2004).........................................................30

*Duane Reade, Inc.,*
    2004 WL. 2235881 (NLRB Div. off Judges Sept. 29, 2004) ...........................8

# TABLE OF AUTHORITIES (Cont'd)

*Duane Reade, Inc.*,
  2004 WL. 329307 (NLRB Div. of Judges, Feb. 18, 2004), *aff'd*, 342 NLRB No.
  104, 2004 W.L. 2096501 (NLRB Sept. 15, 2004) ..........................................................7

*Gelb v. Royal Globe Insurance Co.*,
  798 F.2d 38 (2d Cir. 1986), *cert. denied,* 480 U.S. 948  (1987) .....................................14

*Gould v. Lumonics Research Ltd.*,
  495 F. Supp. 294 (N.D. Ill. 1980)..................................................................................33

*Holcomb v. United Automotive Association of St. Louis, Inc.*,
  852 F.2d 330 (8th Cir. 1988)..........................................................................................24

*International Union of Operating Engineers, Local 103 v. Irmscher & Sons, Inc.*,
  63 F.R.D. 394 (N.D. Ind. 1973) .....................................................................................31

*Kaplan v. Duane Reade NY NY*,
  Docket No. 00- CV-4719 (S.D.N.Y.) ...............................................................................9

*Kaplan v Duane Reade NY NY*,
  Docket No. 00-CV-9842 (S.D.N.Y. 2004) ..................................................................9, 10

*Kroop v. Duane Reade NY*,
  Docket No. 00-CV-4718 (S.D.N.Y.) .................................................................................9

*Kroop v. Duane Reade NY*,
  N.Y., 00- CV-9841 (Union Mutual Fund) ........................................................................9

*Kyhl v. A-One Plumbing, Inc.*,
  679 F. Supp. 911 (E.D. Mo. 1988)..................................................................................21

*Lamontagne v. Pension Plan of United Wire, Metal & Machine Pension Fund*,
  1988 WL. 78319 (S.D.N.Y. 1988), *aff'd*, 869 F.2d 153, 157 (2d Cir.), *cert.*
  *denied*, 493 U.S. 879 (1989) ..........................................................................................14

*Lewis v. Benedict Coal Corp.*,
  361 U.S. 459 (1960) .......................................................................................................17

*Lipton v. Consumers Union*,
  37 F. Supp. 2d 241 (S.D.N.Y. 1999) ................................................................26, 27, 28

## <u>TABLE OF AUTHORITIES</u> (Cont'd)

<u>PAGE</u>

*Local 144 Nursing Home Pension Fund v. Demisay,*
    508 U.S. 581 (1993) ...................................................................................... 22, 24, 26

*Mason Contractors Association of America v. International Council of Employers of Bricklayers Allied Craftsmen,*
    853 F. Supp. 515 (D.D.C. 1994) .......................................................................... 23, 27

*Miles v. New York State Teamsters Conf. Pension & Retirement Fund,*
    698 F.2d 593 (2d Cir.), *cert. denied,* 464 U.S. 829 (1983) ............................................ 14

*Mobile Mechanical Contractors Association, Inc. v. Carlough,*
    566 F.2d 1213 (5th Cir. 1977) ................................................................................ 19, 20

*Modern Woodcrafts, Inc. v. Hawley,*
    534 F. Supp. 1000 (D. Conn. 1982) ................................................................................ 25

*Monahan v. N.Y.C. Department of Corrections,*
    214 F.3d 275 *cert. denied,* 531 U.S. 1035 (2000) ........................................................ 17

*National Stabilization Agreement of the Sheet Metal Industry Trust Fund v. Commercial Roofing & Sheet Metal,*
    655 F.2d 1218 (D.C. Cir. 1981), *cert. denied sub nom. D.W. Browning Contracting Co. v. National Stabilization Agreement of the Sheet Metal Industry Trust Fund,* 455 U.S. 908 (1982) .................................................. 16, 19, 23, 24

*Northrop Corp. v. McDonnell Douglas Corp.,*
    705 F.2d 1030 (9th Cir.), *cert. denied,* 464 U.S. 849 (1983) .............................. 31, 34, 35

*O'Hare v. General Marine Transport Corp.,*
    534 F. Supp. 120 (S.D.N.Y. 1981) ........................................................................ 18, 19

*Parklane Hosiery Co., Inc.  v. Shore,*
    439 U.S. 322 (1979) ................................................................................................ 15

*Quad City Builders Association, Inc. v. Tri City Bricklayers Union No. 7,*
    431 F.2d 999 (8th Cir. 1970) ............................................................................ 20, 23, 24

*Robertson v. NBA,*
    389 F. Supp. 867 (S.D.N.Y. 1975) ........................................................................ 32, 35

## <u>TABLE OF AUTHORITIES</u> (Cont'd)

<u>PAGE</u>

*Rosen v. Duane Reade NY NY,*
Docket No. 00-CV-9843 (S.D.N.Y. 2004) .............................................................9, 10

*Scheirer v. NMU Pension and Welfare Plan,*
585 F. Supp. 76 (S.D.N.Y. 1986) ...................................................................13

*Shermoen v. US,*
982 F.2d 1312 (9th Cir. 1992), *cert. denied*, 509 U.S. 903 (1993) ................................35

*Solvent Chemical Co. v. DuPont,*
242 F. Supp. 2d 196 (W.D.N.Y. 2002).............................................................33

*Thomas v. Reading Anthracite Co.,*
264 F. Supp. 339 (M.D. Pa. 1966) ..................................................................17

*Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees,*
717 F.2d 726 (2d Cir. 1983)........................................................................36

*Valle v. Joint Plumbing Industrial Board,*
623 F.2d 196 (2d Cir. 1980)........................................................................13

*William Dunbar Co., Inc. v. Painters & Glaziers District Council No. 51,*
129 F. Supp. 417 (D.D.C. 1955) ...................................................................20

*Window Glass Cutters League of America v. America St. Gobain Corp,*
428 F.2d 353 (3d Cir. 1970)........................................................................32

## STATUTES  AND RULES

RICO, 18 U.S.C. §§1961 *et seq* ....................................................................16
LMRA §301, 29 U.S.C. §185......................................................................1, 9
LMRA §302, 29 U.S.C. §186........................................................................6
LMRA 302(e), 29 U.S.C. §186(e) ..................................................................19
ERISA §413, 29 U.S.C. §1113......................................................................13
ERISA §502(a)(3), 29 U.S.C. §§1132(a)(3).........................................................9

Fed. R. Civ. P. 15(a)...............................................................................12
Fed. R. Civ. P. 19..................................................................................2
Fed. R. Civ. P. 19(a) ..............................................................................30

## TABLE OF AUTHORITIES (Cont'd)

**PAGE**

Fed. R. Civ. P. 41(a)...............................................................................................................9

### LAW REVIEW ARTICLES

Goetz, *Employee Benefit Trusts Under Section 302 of Labor Management Relations Act,* 59 N.W.U. Law Review 719 (1965) ..................................................22

## PRELIMINARY STATEMENT

In this case, plaintiffs[1] are seeking redress for broken promises made in a collective bargaining agreement and in the trust agreements to which the collective bargaining agreement bound them.  Plaintiffs claim that the Union Mutual Fund, Allied Welfare Fund, the Vacation Fringe Benefit Fund (collectively, the "Funds") and their respective trustees (collectively, the "Fund Defendants") violated Section 301 of the Labor Management Relations Act of 1947, as amended ("LMRA" or "Taft-Hartley"), 29 U.S.C. §185, when they breached the collective bargaining agreement and the terms of the trust agreements, to which Duane Reade was bound. Plaintiffs also request relief with respect to certain violations of the requirements of Section 302(c)(5) of the LMRA.  It is requesting relief under Section 302(e) from both the Fund Defendants and Allied Trades Council ("ATC"), the union with which it had the agreement, because both groups have the legal right to enforce the provisions of the contract requiring contributions to the Funds.

As to the claims for relief under Section 302(e), the Union Mutual Fund and Allied Welfare Fund trust agreements contain *prima facie* violations of the core requirement of equality of representation because they permit adoption of resolutions without majority support from both employer and employee trustees.  The equality of representation requirement has also been violated by failing to solicit votes with respect to the appointment or reappointment of employer trustees for the Allied Welfare Fund and the Vacation Fringe Benefit Fund.  Defendants are also incorrect in stating that relief is not available under these circumstances.  Defendants misread the import of the Supreme Court decision in *Local 144 Nursing Home Pension Fund v. Demisay*,

---

[1] Plaintiffs are Duane Reade, a New York general partnership that was a party to the collective bargaining agreement at issue here, and Duane Reade's general partners, Duane Reade, Inc. and DRI I, Inc.  Complaint, ¶5.

discussed *infra*.  As subsequent cases in this court point out, *Demisay* did not completely

eliminate jurisdiction or relief for violations of the requirements of Section 302(c)(5) of the

LMRA.

ATC has also raised a number of procedural defenses. Contrary to ATC's assertion,

plaintiffs have filed this lawsuit within the statute of limitations.  The appropriate statute of

limitations for an action to enforce a contract pursuant to Section 301 or for pursuant to Section

302 is the New York six-year statute of limitations for breach of contract.  Each collective

bargaining agreement is a separate contract.  As plaintiffs filed this suit on May 7, 2004, less

than six years after January 7, 1999, the date on which the applicable agreement was agreed to

and signed, the statute of limitations does not bar this suit.  A similar analysis applies to the

claim for relief under Section 302(c)(5).

Neither collateral estoppel nor *res judicata* apply as a result of several partial judgments

in consolidated cases brought by the Funds' trustees for allegedly delinquent contributions.

There has never been, and may never be, a determination on the merits of the one overlapping

claim regarding the election of trustees, which was raised as a partial defense in the collection

litigation.  Furthermore, that defense was not raised with respect to the amounts for which the

court entered judgment.

Finally, the National Labor Relations Board ("NLRB") is not a necessary or

indispensable party under Fed. R. Civ. P. 19, and therefore its joinder as a party is neither

required nor appropriate.

## STATEMENT OF FACTS

Duane Reade, which operates a well-known retail drugstore chain in the New York metropolitan area (Second Revised Amended Complaint ¶5 (hereinafter referred to as "Complaint")), has bargained with the Allied Trades Council ("ATC"), the union representing most of its full-time retail employees at the majority of its stores (Complaint ¶¶16 and 22), for over forty years (Complaint, ¶13). Duane Reade also has a bargaining relationship with Local 815 of the International Brotherhood of Teamsters ("Local 815"), which represents its full-time wholesale employees, of approximately equal duration as its relationship with ATC, and with UNITE, which represents full-time retail employees in virtually all of the store whose employees ATC does not represent, including certain stores acquired in 1998 from another retail drugstore chain.

Duane Reade's successive collective bargaining agreements with the ATC have required contributions to three multiemployer funds which also cover employees represented by Local 815 – the Union Mutual Fund, which provides retirement benefits; the Allied Welfare Fund, which provides health and welfare benefits; and the Vacation Fringe Benefit Fund, which provides vacation pay, jury duty reimbursements, and related benefits (Complaint ¶¶7-9, 14) (collectively, the "Funds").[2] To the best of Duane Reade's knowledge, Duane Reade is by far the largest contributor to each of the Funds (Complaint, ¶21), particularly since it contributes to the Funds on behalf of retail employees represented by the ATC and wholesale employees

---

[2] The Union Mutual Fund was established on November 14, 1955 by a trust agreement between ATC, Local 815, various employers, and union and employer trustees (Complaint, ¶7). The Allied Welfare Fund was established on January 26, 1954 by a trust agreement between ATC, various employers, and union and employer trustees (Complaint, ¶8). The Vacation Fringe Benefit Fund was established on February 17, 1971 by a trust agreement between ATC, Local 815, the Metropolitan Wholesale Drug Employers Association, the New York Pharmacists Association, and union and employer trustees. Upon information and belief, Duane Reade was a member of one of the settlor multiemployer associations when the original trust agreement was entered into (Complaint, ¶9).

represented by Local 815, whereas other contributing employers generally have employees who are represented by one or the other of the settlor unions, not both (Affidavit of James Rizzo ("Rizzo Aff."), ¶7).

Shortly after acquiring the locations now represented by UNITE, Duane Reade management realized that the cost of benefits provided by UNITE-affiliated funds on behalf of its UNITE employees was significantly less than the cost of benefits provided to ATC employees by the ATC-affiliated funds (Rizzo Aff., ¶5)  This was also true of the funds affiliated with Local 1199 of the Service Employees International Union, which represented the employees at the new location for a brief period after the acquisition (Rizzo Aff., ¶4).  Much of what has ensued, including this lawsuit, can be attributed to that fact.

The last negotiated collective bargaining agreement between Duane Reade and ATC, covering the period from September 1, 1998 to August 31, 2001, was executed on January 7, 1999 (the "1998 CBA") (Complaint, ¶¶15).  This agreement was negotiated at about the same time as the acquisition of the stores whose employees UNITE began to represent shortly thereafter, and it was not until after this negotiation was concluded that Duane Reade management realized that it was spending far more on benefits for its ATC-represented employees than for its UNITE-represented employees (Rizzo Aff., ¶5).

The 1998 CBA represented that the Funds, to which Duane Reade was required to contribute under the agreement, were "managed and administered by a board of trustees equally representative of the employers and the Union" (Complaint, ¶17; 1998 CBA, Exhibit ("Ex.") 1 to Affirmation of Robert T. McGovern in Support of the Fund Defendants' Motion to Dismiss

("McGovern Aff."), ¶¶7, 13 and 14, pp. 4, 8, and 10).[3]  The 1998 CBA also gave Duane Reade the power to name one of the trustees of each of the funds.  "In the event the Employer and the Union trustees deadlock on the administration of the Fund, they shall agree on an impartial umpire to decide such dispute . . . ."  (1998 CBA, McGovern Aff. Ex. 1, ¶¶7 and 13, pp. 4 and 8; ¶14, p. 10 is substantially similar.)  As the term "Employer" means Duane Reade, 1998 CBA, McGovern Aff. Ex. 1, p. 1, this is in essence a promise to permit Duane Reade to appoint an employer trustee.  See Ex. C to the Declaration of William K. Wolf ("Wolf Dec."), p. 7:10-15. During the prior eight years, Duane Reade has not been given an opportunity to vote on the appointment or reappointment of employer trustees to the Allied Welfare Fund or the Vacation Fringe Benefit Fund, nor has it been asked to appoint an employer trustee for these funds in accordance with the 1998 CBA.[4]

The 1998 CBA also promises that the Union Mutual Fund and the Allied Welfare Fund will provide benefits solely to Duane Reade employees and employees of similarly situated employers (1998 CBA, McGovern Aff, Ex. 1, ¶¶13 and 14, pp. 8 and 10).  However, Duane Reade has reason to believe that other contributing employers did not experience the high employee turnover experienced by Duane Reade, and thus were not similarly situated with Duane Reade (Complaint, ¶ 33; Rizzo Aff., ¶7 and Ex. A).

---

[3] The trust agreements themselves contained such promises as well.  Union Mutual Fund Trust Agreement, Art. I, Section 2(a); Allied Welfare Fund Trust Agreement, Art. I, Section 2(a); Vacation Fringe Benefit Fund Trust Agreement, Art. I, Section 2 (McGovern Aff. Ex. 2-4, respectively).

[4] Duane Reade did vote in September of 1999 for the reappointment of Bertram Gelfand ( nominee of Local 815 employers) and Dr. Donald Merino (ATC employers) as Employer Trustees to the Union Mutual Fund.

The 1998 CBA also binds Duane Reade to the terms of the trust agreements governing the Funds, [5] all of which state that such Funds are to be operated in compliance and conformity with Section 302 of the LMRA, 29 U.S.C. §186 (1998 CBA, McGovern Aff. Ex. 1, ¶¶7, 13, and 14, pp. 4-5 and 3-11; Union Mutual Fund Trust Agreement, McGovern Aff. Ex. 2, Art. III, Section 3; Allied Welfare Fund Trust Agreement, McGovern Aff. Ex. 3, Art. III; Section 3; Vacation Fringe Benefit Fund Trust Agreement, McGovern Aff. Ex. 4, Art. III, Section 3).  The Union Mutual Fund Trust Agreement and the Allied Welfare Fund Trust Agreement also contain provisions that would permit passage of a resolution without majority support from both union and employer trustees, without regard to attendance (Union Mutual Fund Trust Agreement, Art. III, Section 4(a); Allied Welfare Fund Trust Agreement, Art. III, Section 4(a)).

Negotiations for a contract to replace the September 1, 1998 contract, which began in September 2000 (Rizzo Aff., ¶8), proved difficult and contentious.  Duane Reade sought concessions with regard to the benefit plans as a result of their perceived excessive cost.  By 2001, Duane Reade had expanded from approximately thirty (30) stores whose employees were represented by the ATC to one hundred forty-two (142) stores whose employees were represented by the ATC (Complaint, ¶22).  By that time, Duane Reade also operated at least forty (40) stores whose employees were represented by UNITE (Rizzo Aff., ¶10)

As a result of this expansion, UNITE and ATC competed for the affiliation of Duane Reade's new stores.  UNITE filed a petition seeking to replace the ATC as the representative of all Duane Reade employees represented by the ATC.  An election was conducted in October

---

[5] For example, ¶7, p. 4 of the 1998 CBA (McGovern Aff. Ex. 1) provides that payments "shall be made directly to the Vacation Fringe Benefit Fund and shall be held subject to the provisions of a trust indenture dated February 17, 1971 and any amendment, change or additions thereto."  Paragraphs 13 and 14 of the 1998 CBA contain substantially similar provisions with respect to the Allied Welfare Fund and the Union Mutual Fund.

2001 under the auspices of the National Labor Relations Board in which ATC defeated UNITE and retained the right to represent the current employees.

ATC's election victory over UNITE hardened its negotiating position.  On December 6, 2001, Duane Reade made a final offer, which, when rejected, Duane Reade unilaterally implemented on the basis that the parties had reached impasse (Complaint, ¶¶35-36).  Among other things, the offer provided for participation in the 401(k) plan applicable to Duane Reade's non-union employees instead of contributions to and participation in the Union Mutual Fund, participation in the group health plan applicable to Duane Reade's non-union employees instead of contributions to and participation in the Allied Welfare Fund, and direct payment of vacation pay by Duane Reade out of general assets rather than contributions to and participation in the Vacation Fringe Benefit Fund (Complaint, ¶35).

ATC filed unfair labor practice charges with the NLRB regarding the course of bargaining, the declaration of an impasse, and the implementation of the final offer (Complaint, ¶37).  The NLRB upheld an administrative law judge's decision that Duane Reade bargained in bad faith and unlawfully declared impasse, thus purporting to void the implementation of the final offer (Complaint, ¶37).  *Duane Reade, Inc.*, 2004 W.L. 329307 (NLRB Div. of Judges, Feb. 18, 2004) (McDonald, ALJ), *aff'd*, 342 NLRB No. 104, 2004 W.L. 2096501 (NLRB Sept. 15, 2004).[6]

Contrary to the ATC's assertion, this lawsuit is not the "most recent in a series of meritless lawsuits," Memorandum of Law in Support of ATC's Motion to Dismiss ("ATC Brief"), p. 2, that Duane Reade and UNITE have filed against the ATC in federal and state

---

[6] Duane Reade has asked the United State Circuit Court for the District of Columbia to review the NLRB's decision, and the Board has asked that the court enforce it.  (Complaint, ¶37; Weller Aff. Ex. 1 Wolf Dec. Ex. D).

courts.  Rather, what is "meritless" is defendant's characterization of both this case and the litany

of cases cited on pages 2 and 3 of its brief.  For example, defendant lists three decisions in the

same participant lawsuit brought against the ATC and its officers, the Funds, their trustees, and

their service providers separately, to give the impression that they were three separate cases.

*Bona v. Barasch*, Docket No. 01-CV-2289, 2003 W.L. 1395932 (S.D.N.Y. March 20, 2003)

(denying motion to dismiss except as to RICO claim, which plaintiffs lacked standing to raise),

*recons. sub nom Martinez v. Barasch,* 2004 W.L. 1555191 (S.D.N.Y. July 12, 2004) (dismissing

Labor-Management Reporting and Disclosure Act claim against ATC officers because plaintiffs

were not ATC members at the time the claim was brought); *Martinez v. Barasch*, 2004 W.L.

1367445 (S.D.N.Y. June 16, 2004) (denying motion for class certification).  Furthermore,

defendant conveniently fails to note that plaintiffs in this case have no involvement in the

participant lawsuit, direct or indirect,[7] and UNITE's only involvement is to advance the

plaintiffs' attorneys' fees.[8]

    Both *Duane Reade, Inc. v. Local* 338 state court decisions listed have been appealed,

which defendant fails to note.[9]  Defendant also fails to note that Duane Reade was successful in

obtaining preliminary injunctive relief.  3 Misc.3d 405, 777 N.Y.S.2d 231 (N.Y. Sup Ct. N.Y.

County 2003).  Local 338's appeal of the grant of this relief was rejected.  11 A.D.3d 406, 784

---

[7] Plaintiffs also have no involvement in *Isaac v. Allied Trade Council,* in which a motion for reconsideration was filed on December 3, 2004 and is still pending.  Ex. 15 to the Affirmation of Cheryl J. Weller in Opposition to Defendants' Motions to Dismiss. ("Weller Aff.")

[8] UNITE's payment of plaintiffs' attorneys fees was, however, a factor in Chief Judge Mukasey's denial of class certification.

[9] A copy of the various notices of appeal filed with regard to the *Duane Reade, Inc. v. Local 338* litigation.   is attached to Weller Affirmation as Ex. 16

N.Y.S.2d 505 (1st Dep't 2004).  Thus, while Duane Reade's damage claims were dismissed, its claim for injunctive relief was upheld both at the trial level and on appeal.

The first of the NLRB cases cited in the second paragraph of the brief, 2004 W.L. 2235881 (NLRB Div. off Judges Sept. 29, 2004) deals with ATC's purported affiliation with Local 338 of the Retail, Wholesale, Department Store Union ("RWDSU"), UFCW.  NLRB Administrative Law Judge Green issued a decision in favor of the ATC.  *Duane Reade, Inc.,* 2004 W.L. 2235881 (NLRB Div. off Judges Sept. 29, 2004).  Duane Reade filed exceptions to the ALJ decision on November 30, 2004.  Weller Aff. Ex. 17.  The deadline for the Regional Attorney and Local 338 to file cross-exceptions has been extended to January 28, 2005.

As if the foregoing litigation were not sufficient, the trustees of the Funds brought a total of five actions against Duane Reade (styled "Duane Reade NY NY") in this Court in 2000.  Two of those cases, *Kroop v. Duane Reade NY NY,* 00-CV-4718, and *Kaplan v. Duane Reade NY NY*, 00-CV-4719, filed on June 26, 2000, were actions to recover contributions for stores whose employees were represented by UNITE.  These cases, which were assigned to Judge Hellerstein shortly after they were filed, were eventually dismissed on consent pursuant to Fed. R. Civ. P. 41(a) on or about November 13, 2003 (see Ex. 2 to Weller Aff.).

The three other cases, *Kroop v. Duane Reade NY NY,* 00-CV-9841 (Union Mutual Fund), *Kaplan v Duane Reade NY NY*, 00-CV-9842 (Allied Welfare Fund), and *Rosen v. Duane Reade NY NY*, 00-CV-9843 (Vacation Fringe Benefit Fund), were filed on December 29, 2000 and sought allegedly delinquent contributions pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§1132(c)(3) and 1145, and Section 301 of the LMRA, 29 U.S.C. §185 (see Weller Aff. Ex. 3-5, ¶1).  These three cases were eventually transferred to Judge Hellerstein and consolidated under

the first docket number (00-CV-9841, the Union Mutual Fund case).  These cases were held in abeyance while the parties negotiated over the prior two cases; however, once the prior two cases were dismissed, these cases became active again.

After conducting an audit, plaintiffs filed motions for summary judgment on March 15, 2004.  During oral argument on the motion for summary judgment on August 5, 2004, Judge Hellerstein expressed his belief that the collection action was not "the appropriate vehicle to vindicate [Duane Reade's] interest to have responsive trustees," Transcript, Wolf Dec. Ex. C, 7:17-21, 8:1-5, and warned Duane Reade's counsel that "in all likelihood I will hold . . . that this defense is not applicable to this proceeding and is not a ground for defense against a collection action," Wolf Dec. Ex. C, 18:24-19:1. [10]  An order granting summary judgment to the Vacation Fringe Benefit Fund trustees (*Rosen v. Duane Reade NY NY,* Docket No. 00-CV-9843) and as to warehouse workers (Local 815) in the Allied Welfare Fund (*Kaplan v. Duane Reade NY NY,* Docket No. 00-CV-9842) was signed on September 29, 2004 and entered on September 30, 2004, after an evidentiary hearing regarding the audit findings, and corresponding judgments were filed on November 5, 2004.[11]  The judgments were appealed on November 19, 2004 (Ex. 10-13 to Weller Aff.),[12] although the appeal of the partial judgment in *Kaplan v. Duane Reade*

---

[10] As a review of the transcript of the oral argument shows, Ex. C to Wolf Dec., pp. 5:5-15; 19:17-20:5; 20:12-16, as of that hearing, Duane Reade only asserted an illegality defense as to the Allied Welfare Fund, and the sole factual basis for the illegality defense was the failure to consult with Duane Reade regarding the election of management trustees.  Wolf Dec., Ex C, pp. 7:22-8:1; 9:23-10:2; 16:22-25.  See also Weller Aff. Ex. 6, p. 1, n.1.  Duane Reade did not address the illegality defense in its briefs, although the Funds did.  Weller Aff., Exs.7 and 8, p. 1.

[11] A copy of the September 29, 2004 order is Ex.9 to the Weller Aff., copies of the judgments can be found at Ex. A and B of Wolf Dec. and Ex. 5 and 6 of the McGovern Aff.

[12] Even though Duane Reade had removed the illegality defense from consideration with regard to these judgments, this issue was preserved on appeal.  See Ex. 10-13 to Weller Aff.  Moreover, it is clear that the illegality defense could not have been relevant to either judgment, as briefs on the issue were still pending at the time the judgments were entered.  See *infra.*

*NY NY,* concerning the warehouse employees covered by the Allied Welfare Fund, has since been withdrawn.[13]

At Judge Hellerstein's request, supplemental memoranda of law in support of and in opposition to the motions for summary judgment, confined solely to the illegality defense raised by Duane Reade and the proper interpretation of the six-month delay in contributions for new employees, were filed in Docket Nos. 00-CV-9841 and 9842 on December 10, 2004.[14] Supplemental reply memoranda of law on those same issues were filed in the same cases on or about January 12, 2005.[15]

Until the adverse ALJ decision, Duane Reade had every reason to believe that it had lawfully implemented its final offer and no longer was obligated to contribute to the defendant Funds.  In large part, this litigation is a protective measure in case the NLRB order requiring contributions to the Funds for the period beginning September 1, 2001 is upheld and enforced on appeal to the D.C. Circuit.

## PROCEDURAL HISTORY

Plaintiffs commenced this action on May 7, 2004 by filing an initial complaint against ATC and ATC officers Jack Morro, Jack Siebel, Reginald Rosado, James Crowley, and Basil MacDonald, in their individual and representative capacities (collectively, the "ATC Defendants"); the Union Mutual Fund, the Allied Welfare Fund, the Vacation Fringe Benefit Fund (collectively, the "Funds") and their respective trustees (collectively, the "Fund

---

[13] See Weller Aff. Ex. 14.

[14] Copies of the relevant portions of both briefs are attached to Weller Aff. as Ex. 7 and 8.

[15] A copy of the relevant portions of plaintiffs' brief is attached to Weller Aff. as Ex. 6.

Defendants"); George Barasch, the founder of the ATC, his son Stephen Barasch, his daughter, Linda Barasch Glazer, her husband, Richard Glazer, Churchill Administrators, Inc., which provides administrative services to the Allied Welfare Fund and the Vacation Fringe Benefit Fund and is operated by Stephen Barasch, and Financial Administrators, Inc., which provides administrative services to the Union Mutual Fund and is operated by Linda Barasch Glazer and Richard Glazer.  The complaint alleged (1) violations of Section 301 of the LMRA by ATC, its officers, and the Fund defendants; (2) entitlement to relief against the ATC and the Fund Defendants as a result of the violation of Section 302 of the LMRA, and (3) violations of the Racketeering Influenced and Corrupt Organizations act ("RICO") by all of the defendants (except for George Miranda, a Local 815-affiliated union trustee).

     An amended complaint was filed as of right pursuant to Fed. R. Civ. P. 15(a) on June 29, 2004 withdrawing certain allegations pertaining to the election of trustees to the Union Mutual Fund.  All of the defendants other than the Fund Defendants filed motions to dismiss in response to the initial and amended complaints, the last of which was filed on September 14, 2004, and Magistrate Judge Pitman held an initial pre-trial conference on September 28, 2004, at which the parties agreed that all pending motions to dismiss would be withdrawn, plaintiffs would file a Second Revised Amended Complaint (to distinguish it from a proposed Second Amended Complaint which plaintiffs had circulated previously to obtain consent for leave to amend without a motion), and that defendants would file responsive pleadings to the Revised Second Amended Complaint, which could not thereafter be amended, or leave sought to amend it, during the pendency of any motions addressed to the Revised Second Amended Complaint or as a result of the decision on any such motions.  Magistrate Judge Pitman entered an order embodying this agreement.

A Revised Second Amended Complaint was filed on October 29, 2004, in which the RICO claims against all defendants and the Section 301 claim against the ATC Defendants were withdrawn.  This eliminated John Morro, Jack Siebel, Reginald Rosado, James Crowley, Basil McDonald, George Barasch, Stephen Barasch, Linda Barasch Glazer, Richard Glazer, Churchill Administrators, Inc., and Financial Administrators, Inc. as defendants.  On December 7, 2004, both the ATC and the Fund Defendants filed motions to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.

## ARGUMENT

I.    **PLAINTIFFS' LMRA SECTION 302(c)(5) CLAIM SHOULD NOT BE DISMISSED**

   *A.    Plaintiffs' §302 Claim is Not Time-Barred*

The statute of limitations for violation of Section 302(c)(5) is based on the same six-year state law contract statute of limitations pursuant to CPLR §213 as the Section 301 claim.  *Valle v. Joint Plumbing Indus. Board*, 623 F.2d 196, 202 n.10 (2d Cir. 1980); *Barninger v. N'atl Maritime* Union, 372 F. Supp. 908, 913 (S.D.N.Y. 1974) (Gurfein, J.); see *Scheirer v. NMU Pension and Welfare Plan*, 585 F. Supp. 76, 78 (S.D.N.Y. 1986) (Conner, J.) (six-year statute of limitations applies unless written agreement provides otherwise).  For the reasons given below, the three-year statute ;of limitations for fiduciary breach under Section 413 of ERISA, 29 U.S.C. §1113, is entirely inapplicable.

The *Kwak v. Joyce* case cited by defendant as applying the ERISA statute of limitations deals with a hybrid Section 302(c)(5) and ERISA breach of fiduciary duty claim.  Since the factual basis for the LMRA claim was the same as the ERISA claim, 683 F. Supp. at 1547, the

court applied the same statute of limitations to both. *Id.* at 1548-1549.[16]  The court in *Kwak* furthermore admitted that the most analogous state statute of limitations is usually applied to Section 302 claims.  Furthermore, ERISA only provides a statute of limitations for fiduciary breach.  Other ERISA actions are subject to the most analogous state statute of limitations, which, in the case of claims for benefits, is the same six-year statute of limitations for breach of contract applied to Section 301 claims that do not involve breach of the duty of fair representation.  *Miles v. New York State Teamsters Conf. Pension & Retirement Fund*, 698 F.2d 593, 598 (2d Cir.), *cert. denied*, 464 U.S. 829 (1983).

A Section 302 claim accrues when the plaintiff knows or should have known of the violation.  *See Lamontagne v. Pension Plan of United Wire, Metal & Machine Pension Fund*, 1988 W.L. 78319, *4 (S.D.N.Y. 1988) (Lowe, J.), *aff'd*, 869 F.2d 153, 157 (2d Cir.), *cert. denied*, 493 U.S. 879 (1989).[17]  Under this analysis, it is clear that this case was filed within the statute of limitations, as plaintiffs could not have had actual knowledge of the violation of the agreement until after it was signed on January 7, 1999, less than six years prior to the filing of this action.

**B.**   ***Plaintiffs' §302 Claim is Not Barred by the Doctrines of Collateral Estoppel and Res Judicata***

**1.**   ***Collateral Estoppel Does Not Apply***

Collateral estoppel (also known as issue preclusion) prevents relitigation of an issue of law or fact that was decided in a prior proceeding.  *Andrea Doreen Ltd. v. Building Material*

---

[16] The ERISA statute of limitations is in fact the earlier of (1) six years after the last date on which the breach occurred (or could have been cured, in the case of an omission) or (2) three years after the date on which the plaintiff had actual knowledge of the breach or violation, except that in cases of fraud or concealment, an action may be brought no later than six years after the discovery of the breach or violation.

[17] However, *Dameron v. Sinai Hosp. of Baltimore, Inc.*, 595 F. Supp. 1404 (D. Md. 1984) suggests that accrual begins with actual knowledge, *id.* at 1412.

*Local Union 282*, 299 F. Supp.2d 129,143-144 (E.D.N.Y. 2004). Collateral estoppel applies when:

> (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.

*Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995); *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986), *cert. denied,* 480 U.S. 948 (1987); *Andrea Doreen,* 299 F. Supp.2d at 144 (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998)).

Defensive collateral estoppel occurs when a plaintiff is estopped from asserting a claim that plaintiff had previously litigated and lost against another defendant. It "precludes a plaintiff from relitigating identical issues by merely switching adversaries . . . [and] gives a plaintiff a strong incentive to join all potential defendants in the first action if possible." *Parklane*, 439 U.S. at 330-31. However, it is usually invoked when a plaintiff litigates claims serially against different defendants. Here, the alleged preclusion arises from the use of a defense in a collection action brought by the Funds. While the ATC is in privity with the Funds for certain purposes, as the ATC is one of the settlors of the Funds, it does not have standing to raise *res judicata* based on judgments obtained by the Funds in the collection litigation.[18]

In order for collateral estoppel to apply, "(1) there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling."

---

[18] It is especially odd that only the ATC has raised collateral estoppel as a defense and that its brief discusses the application of *res judicata* to this case at much greater length and in more detail than the Funds' brief, considering that the judgments on which the *res judicata* effect is supposedly based were obtained by the Funds, not the ATC. It is not clear why the ATC is such an enthusiastic promoter and protector of someone else's rights.

*Burgos v. Hopkins*, 14 F.3d 787, 792 (2d Cir. 1994).  A review of the facts of the *Andrea Doreen*

case is useful, as its posture is similar to this case, with one important exception.  *Andrea Doreen*

also involves the alleged preclusive effect of judgments in ERISA collection litigation brought

by multiemployer funds.  In *Andrea Doreen*, however, the court in the collection action

necessarily found that the obligation to contribute was valid, despite the lack of signature of the

applicable collective bargaining agreement and the trustees; failure to follow the agreement's

demand requirements strictly.  As a result, the employer was precluded from relitigating the issue

in the subsequent action it brought alleging that the funds were operated in violation of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§1961 *et seq.*

This case differs from *Andrea Doreen* because the issue in *Andrea Doreen* was

"necessary to support a valid and final judgment on the merits," *id.*, whereas the illegality

defense was not even raised with respect to the judgments already entered in the collection

litigation, which defendants claim are preclusive.  Even if the illegality defense had been raised

with respect to those judgments, no final determination has yet been made on the issue, as the

final set of briefs discussing it and another issue have just been filed, and Judge Hellerstein has

yet to make a definitive ruling.  For all we know, Judge Hellerstein might well rule in accordance

with his comments at the conclusion of the portion of the oral argument on summary judgment

regarding the illegality defense that "in all likelihood I will hold . . . that this defense is not

applicable to this proceeding and is not a ground for defense against a collection action," Wolf

Dec. Ex. C, 18:24-19:1, which would not constitute a decision on the merits.

As the discussion above demonstrates, the type of defenses that can validly be raised and

considered in response to ERISA and LMRA collection actions brought by funds are limited.

Funds are treated like holders in due course.  *See Benson v. Brower's Moving & Storage Inc.*,

907 F.2d 310, 314 (2d Cir.), *cert. denied*, 498 U.S. 982 (1990) (although multiemployer funds are third-party beneficiaries of collective bargaining agreements between employers and unions, they are nevertheless in a position superior to the union as the original promisee, similar to a holder in due course); *Central States v. Gerber Truck Services, Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989) (making analogy to holders in due course under commercial law).  Thus, courts have rejected defenses such as those based on inequality of representation.  *See, e.g., National Stabilization Agreement of the Sheet Metal Industry Trust Fund v. Commercial Roofing & Sheet Metal*, 655 F.2d 1218, 1227 & n.16 (D.C. Cir. 1981), *cert. denied sub nom. D.W. Browning Contracting Co. v. National Stabilization Agreement of the Sheet Metal Industry Trust Fund*, 455 U.S. 908 (1982) ("appellants may not successfully assert an equal representation defect as a defense to appellees' collection action"); *Thomas v. Reading Anthracite Co.*, 264 F. Supp. 339, 345-347 (M.D. Pa. 1966) (same);[19] *see generally Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 470-471 (1960).

   Moreover, the factual basis for the illegality defense was narrower in *Andrea Doreen* than here.  As the court noted in *Doreen*, "Arguments that the Union exaggerated the actual amount it claimed was owing, however, are not collaterally estopped."  *Id.* at 144 n.18.  The preclusion with regard to Section 302(c)(5) issues in *Doreen* had more to do with the application of the *Demisay* case (discussed below) than with the effect of prior litigation.  *Id.* at 148.

---

[19] In fact, in *Thomas v. Reading Anthracite Co.*, availability of injunctive relief in a suit brought pursuant to Section 302(e) was a primary reason for refusing to permit such claims to be raised as a defense to a collection action brought by a multiemployer fund under Section 301 of the LMRA to enforce obligations under a collective bargaining agreement.  264 F. Supp. at 347-348.

### 2.     *Res Judicata Also Does Not Apply*

The doctrine of res judicata (also referred to as claim preclusion)

> holds that a final judgment on the merits of an action precludes the parties
> or their privies from relitigating issues that were or could have been raised
> in that action.  Whether or not the first judgment will have preclusive
> effect depends in part on whether the same transaction or series of
> transactions is at issue, whether the same evidence is needed to support
> both claims, and whether the facts essential to the second were present in
> the first.  To prove the affirmative defense a party must show that (1) the
> previous action involved an adjudication on the merits; (2) the previous
> action involved the plaintiffs or those in privity with them; (3) the claims
> asserted in the subsequent action were, or could have been, raised in the
> prior action.

*Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275, 284-85, *cert. denied,* 531 U.S. 1035

(2000).  The Second Circuit takes a transactional approach to *res judicata*, "barring a later claim

arising out of the same factual grouping as an earlier litigated claim even if the later claim is

based on different legal theories or seeks dissimilar or additional relief."  *Burgos v. Hopkins*, 14

F.3d 787, 790 (2d Cir.1994).  However, *res judicata* will not preclude a second action if the

initial forum did not have the power to award the relief sought in the later litigation due to formal

jurisdictional or statutory barriers, even if the later litigation arises out of the same factual

circumstances as the initial action.  *See id.*

In *O'Hare v. General Marine Transport Corp.*, 534 F. Supp. 120, 123 (S.D.N.Y. 1981), a

collection action brought by the trustees of Taft-Hartley funds, Judge Sweet held that the Second

Circuit's prior determination that an unfair labor practice charge arising out of the employer's

failure to honor a contract due to its alleged withdrawal from a multiemployer association was

time-barred "does not present a res judicata bar to this case nor [does it] collaterally estop the

determination of the issues relevant to this case since the causes of action differ and the issues

relevant to the instant action were not necessarily previously determined." The Second Circuit's review of the prior NLRB determination failed to address the issues raised in the subsequent collection action. "Although these issues were litigated, their resolution was not necessary to the determination of the prior action by the Second Circuit, hence no collateral estoppel." *Id.* The same reasoning is applicable here, since the judgments in the collection action alleged to have preclusive effect were not judgments on the merits of the alleged overlapping issue. Moreover, the factual basis for the claims is not identical. Only the infirmities in the selection of trustees were raised in the collection litigation. The claims raised here are much broader. Thus, the repetitious litigation of the same causes of action, which the doctrine of *res judicata* was developed to prevent, *id.* at 124, is not implicated here. As Judge Sweet observed, "The present claim for relief sought, the payment of funds due under the agreement based on a breach of contract, though stemming from a common nucleus of facts, should not be barred by res judicata if it never could have been achieved in the prior proceeding. The issues are thus not identical . . . ." 534 F. Supp. at 124.

### C.   *Plaintiffs Have Stated a Claim Upon Which Relief May Be Granted*

#### 1.   *Plaintiffs Have Stated a Claim Against the ATC*

Section 302(a) prohibits payments by employers, or their representatives, to representatives of employees except under the limited circumstances set for in Section 302(c), which includes specified payments to various benefits trusts which comply with the provision of the LMRA. Section 302(b) also prohibits request and demands for payments that violate Section 302(a). If the trust agreements do not satisfy the requirements of Section 302(a), any demand on ATC's part to enforce the contribution requirements is prohibited by Section 302(b). *Mobile Mechanical Contractors Association, Inc. v. Carlough*, 566 F.2d 1213, 1215 (5th Cir. 1977).

This claim is being brought against ATC primarily for protective reasons, to prevent ATC from seeking to enforce a contribution requirement because it is not bound by any order or judgment in this case.

### 2.      Plaintiffs Can Obtain Equitable Relief Against the ATC

Injunctive and declaratory relief are both permissible under Section 302(e).  Section 302(e) grants federal district courts equitable jurisdiction to "restrain violations of this section . . .. ." 29 U.S.C. §186(e).  The federal courts have agreed that this jurisdictional provision permits them to grant injunctive and, in some instances, declaratory relief in restraining these violations.[20]  *National Stabilization Agreement of the Sheet Metal Industry Trust Fund v. Commercial Roofing & Sheet Metal*, 655 F.2d 1218, 1224 and nn. 7-8 (D.C. Cir. 1981); *see Mobile Mechnical Contractors Ass'n, Inc. v. Carlough*, 566 F.2d 1213 (5th Cir. 1978) (district court issued a preliminary judgment against continued strike to obtain contributions to an unemployment benefits fund that employers argued violated Section 302's equal representation requirement; appropriateness of declaratory relief depends on whether it is prospective or retrospective); *Quad City Builders Ass'n, Inc. v. Tri City Bricklayers Union No.* 7, 431 F.2d 999, 1002-1003 (8th Cir. 1970) (injunctive relief approved); *William Dunbar Co., Inc. v. Painters & Glaziers District Council No. 51*, 129 F. Supp. 417, 420, 424 (D.D.C. 1955) (injunctive and declaratory relief available, but plaintiffs did not prove basis for relief).  Unlike the employers who made up the Mobile Mechanical Contractors Association, Inc., 566 F.2d at 1217, plaintiffs is in danger of sustaining a direct injury as a result of the defendants' actions, namely, being forced to contribute to illegally-structured funds that do not comply with Section 302(c)(5)'s

---

[20] *Demisay* does not limit the scope of relief under Section 302(e); rather, it limits the scope of what constitutes a "violation of this section".  Thus, cases that might not be good law after *Demisay* with regard to whether the actions complained of violate Section 302(c)(5) are still good law with respect to remedies.

core requirement of equal representation.  Thus, there is a live case or controversy sufficient to confer jurisdiction on this court.

### 3.    *Plaintiffs Have a Valid Claim Under LMRA Section 302(c)(5)*

#### a.    *Plaintiffs Have Adequately Alleged Violations of LMRA Section 302(c)(5)*

##### i.    <u>*Basis for Claim Regarding Inequality of Voting*</u>

Article III, Section 4(a) of the Union Mutual Fund Trust Agreement (McGovern Aff. Ex. 2) provides that "[d]ecision of the Trustees shall be made by a majority vote and must include the concurring vote of at least one Trustee from each group of Trustees."  If some trustees are absent, the Trust Agreement provides that the side with absent trustees has the right to have any motion tabled and held over until the next meeting upon request, Art. III, Section 4(a), so absenteeism should not normally affect the outcome of a vote on a resolution.  However, since there are a total of six trustees (three to each side) (Union Mutual Fund Trust Agreement, McGovern Aff. Ex. 2, Art. I, Section 2(a)), it is entirely possible for a resolution to pass without majority support from both sides.  For example, if all of the trustees on one side and one of the trustees on the other side vote in favor of a resolution, with the other trustees opposed, the resolution would carry, as a majority of the trustees present voted in favor of it, but it would not enjoy majority support among both groups.  The terms of the Allied Welfare Fund Trust Agreement (McGovern Aff. Ex. 3) are substantially the same[21].

Defendants further misconstrue the nature of plaintiffs' claim regarding inequality of voting.  Their citation of *Boucher v. Williams*, 13 F.Supp.2d 84, 106 (D. Me. 1998), is totally inapposite.  Leaving aside for the moment the procedural and remedial issues raised by the

---

[21] This is not an issue with respect to the Vacation Fringe Benefit Fund because its trust agreement requires unanimity on the part of the trustees.  McGovern Aff., Ex. 4, Art. III, Section 4.

Supreme Court's decision in *Local 144 Nursing Home Pension Fund v. Demisay*, discussed below, *Boucher* involved a claim that Section 302(c)(5) of the LMRA guaranteed that Taft-Hartley funds would always be administered by an equal number of employer and union trustees. Instead, the fund at issue was being administered by two union trustees and one employer trustee.  Not surprisingly, the court rejected this claim, as it is not realistic to expect no vacancies to occur or for replacements to be appointed immediately once vacancies occur.[22]

The case of *Kyhl v. A-One Plumbing, Inc.* 679 F. Supp. 911 (E.D. Mo. 1988), which defendants also cite, is similar.   The employer's claim in *Kyhl* was that "there is no true equality of voting power between the management and the union trustees inasmuch as one group could be outvoted by the other because of absenteeism."  679 F. Supp. at 913.  Such is not the gravamen of plaintiffs' claim.  Instead, the trust agreements at issue permit resolutions to be approved so long as a majority of trustees in attendance vote in their favor, even if a majority of union or employer trustees in attendance at the meeting do not vote affirmatively**.**  Contrary to defendants' assumption, this is not a defect tied to absenteeism, as this effect can occur even if all of the trustees are present.  For example, a resolution can be approved by the vote of all three union trustees and one employer trustee, or *vice versa*, since that would amount to a four to two vote majority.  However, the resolution would not have majority support from each side.

The requirement that employers and employees be equally represented in the joint administration of trust funds is central to the Congressional scheme set forth in Section 302. *Assoc. Contractors of Essex County, Inc. v. Laborers Int'l Union of North America,* 559 F.2d 222, 227 (3d Cir. 1977).  It is for this very reason that Raymond Goetz's article, *Employee*

---

[22] *Boucher* relies entirely on *Demisay* for this point without any discussion or analysis., unlike the cases discussed *infra*.

*Benefit Trusts Under Section 302 of Labor Management Relations Act,* 59 N.W.U. Law Review

719 (1965), observes that:

> An equal number of trustees appointed by employers and an equal number
> of trustees appointed by the union does not in itself assure effective equal
> representation.  The basic requirement in the concept of equal
> representation would seem to be that each side have a veto power on any
> proposed action.  It is such veto power in the employer representatives
> which provides the safeguard against use of funds for union purposes
> which the statute sought to provide.  Where formal action by a board of
> trustees requires a majority approval, **it is essential that both the union
> trustee group and the employer trustee group have, in the aggregate,
> equal *voting power*.**  This equality in voting power may be achieved with
> or without equality in the number of trustees by appropriate provisions in
> the trustee voting procedure.

*Id.* at 747 (bolding added).[23]  The Third Circuit agreed with Mr. Goetz's conclusion that

"the essence of equal representation is that each side have veto power on any proposed action."

*Assoc. Contractors of Essex Count, Inc. v. Laborers Init'l Union of North America*, 559 F.2d at

227, citing the Goetz article quoted above, and held that a mere possibility of union domination

or abuse was sufficient to require relief.  As the Fifth Circuit recognized in *Costello v. Lipsitz*,

547 F.2d 1267, 1278 (5th Cir.), *cert. denied*, 434 U.S. 829 (1977), the equal representation

requirement covers more than a requirement that employees and employers have equal numbers

of trustees or representatives, as "§302 would be eviscerated should the phrase 'employees and

employers are equally represented in the administration of such fund' connote only the

requirement that employees and employers have equal numbers of trustees . . . or

representatives" in case involving management trustees' unfettered and complete control over

the administration of the trust fund.  Where, as here, plaintiffs assert that employers and

employees are unequally represented in the joint administration of a benefit fund, the court

---

[23] The Goetz article is generally considered authoritative in the field.  Among the cases citing to the article is Justice
Scalia's majority opinion in *Demisay.*  508 U.S. at 585-586.

should look beyond the equality of numbers to determine whether the plan's structure creates the potential for union domination.[24] *National Stabilization Agreement of the Sheet Metal Industry Trust Fund v. Commercial Roofing & Sheet Metal*, 655 F.2d 1218, 1224 (D.C. Cir. 1981), *cert. denied sub nom. D.W. Browning Contracting Co. v. National Stabilization Agreement of the Sheet Metal Industry Trust Fund*, 455 U.S. 909 (1982); *Mason Contractors Assn' of America v. Int'l Council of Employers of Bricklayers & Allied Craftsmen*, 853 F. Supp. 515, 524-525 (D.D.C. 1994); *cf. Denver Metropolitan Ass'n of Plumbing Heating Cooling Contractors v. Journeyman Plumbers & Gas-Fitters Local No. 3*, 586 F.2d 1367, 1375 (10th Cir. 1978) (there is no truly equal representation of employers and employees when domination by one group or the other exists); *Quad City Builders Ass'n v. Tri City Bricklayer Union No.* 7, 431 F.2d 999, 1003 (8th Cir. 1970)( multiemployer fund violated the equal representation requirement when one of the employer trustees was also a union member, and eight out of ten contractors entitled to vote for employer trustees were union members).  If the potential for union domination exists, as is alleged in paragraph 31 of the Complaint, the court should take the appropriate equitable measures to ensure compliance with the requirement of equal representation.  *National Stabilization Agreement,* 655 F.2d at 1218; *Quad City Builders Ass'n*, 481 F.2d at 1003.

<em>ii.      Basis for Claim Regarding Appointment of Trustees</em>

Duane Reade was also not given the opportunity to vote or consulted regarding the election of trustees for the Allied Welfare Fund and Vacation Fringe Benefit Fund, in violation of both the 1998 CBA and the applicable trust agreements.  The 1998 CBA incorporated the terms of the trust agreements, which required provision of ballots to all contributing employers

---

[24] *Demisay* is not relevant to the extent this inquiry is limited to the establishment or the form of the trust.  See Point II.B.3.b. *infra; see also Mason Contractors Ass'n of America v. Int'l Council of Employers of Bricklayers  Allied Craftsmen*, 853 F. Supp. 515, 524-525 (D.D.C. 1994) (principle of equal representation is still enforceable).

and compliance with Section 302(c)(5), whose equal representation clause guarantees that each side chooses its own trustees without interference from, or influence by, the other side.[25]  The Allied Welfare Fund and Vacation Fringe Benefit Fund did not follow these provisions.  The failure to solicit input from Duane Reade (and presumably from other employers) amounts to union domination of the trustees.  *Denver Metropolitan Ass'n*, 586 F.2d at 1376.  In *Holcomb v. United Automotive Ass'n of St. Louis, Inc.*, 852 F.2d 330 (8th Cir. 1988), the circuit court upheld the district court's determination that the trust agreement be reformed to bring it into conformity with the Section 302(c)(5) "equal representation" requirement by giving the union the authority to remove and replace two of the four trustees, when previously the union received no notice of, and exercised no control over, the selection or removal of trustees.  *Id.* at 332.

The Allied Welfare Fund and Vacation Fringe Benefit Fund also failed to follow the terms of the 1998 CBA giving Duane Reade the power to name one of the employer trustees. (1998 CBA, ¶¶7 and 13, pp. 4 and 8; ¶14, p. 10 is substantially similar.)  As *Modern Woodcrafts, Inc. v. Hawley*, 534 F. Supp. 1000 (D. Conn. 1982), and the Goetz article cited above recognize, in the absence of a specific promise to permit a particular employer to appoint an employer trustee, no employer or group of employer has a right to appoint their own representative or automatically become members of the board of trustees.  Duane Reade is not requesting equal representation of each employer, but rather its ability to have input in the process and to appoint its own trustee in accordance with the 1998 CBA.[26]

---

[25] The argument that *Demisay* disposes of this claim is incorrect.  The *Demisay* decision itself recognizes that contractual claims are not foreclosed.  508 U.S. 581, 588-589 (1993).

[26] Since Duane Reade voted for the nominees for Union Mutual Fund employer trustees in 1999, any claim to appoint a trustee to that board was effectively waived.  Hence, no claim regarding election of trustees is made with respect to the Union Mutual Fund.

As *Hawley* and the Goetz article cited above recognize, in the absence of a specific promise to permit a particular employer to appoint an employer trustee, no employer or group of employer has a right to appoint their own representative or automatically become members of the board of trustees.  Duane Reade is not requesting equal representation by each employer, but rather its ability to have input in the process and to appoint its own trustees in accordance with the 1998 CBA.[27]

iii.   <u>Basis for Claim Regarding Similarly Situated Employees</u>

The 1998 CBA provides that the Union Mutual Fund and the Allied Welfare Fund will provide benefits solely to Duane Reade employees and "employees employed by all other employers similarly situated."  (1998 CBA, ¶¶13 and 14, pp 8 and 10.)  There is reason to believe that employees of other contributing employers are not similarly situated to Duane Reade, and thus the respective Funds have violated the terms of the 1998 CBA.  See Rizzo Aff. ¶11 and Ex. A.  This issue is disputed and the facts relating to it need to be established through discovery, not through a motion to dismiss or a motion for summary judgment.

**b.   *Plaintiffs Have a Cause of Action Under LMRA Section 302(c)(5) (Demisay)***

Contrary to defendants' assertions, the Supreme Court's decision in *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581 (1993), is not a bar to all claims under Section 302(c)(5) of the LMRA.[28]  The *Demisay* decision emphasizes that 302(c)(5) only confers jurisdiction with regard to the receipt of contributions, which is in fact what is at issue here.

---

[27] Since Duane Reade voted for the Funds' nominee for employer trustee of the Union Mutual Fund in 1999, any claim to appoint a trustee to that board was effectively waived.  Hence, no claim regarding election of trustees is made with respect to that Fund.

[28] It should be kept in mind that all that *Demisay* actually decided was "whether a federal district court may issue an injunction pursuant to § 302 of the Labor Management Relations Act, 2947 (LMRA) [citation omitted], as requiring the trustees of a multiemployer trust fund to transfer assets from that fund to a new multiemployer trust fund established by employers who broke away from the first fund."  *Id.* at 582.

> By its unmistakable language, § 302(e) provides district courts with
> jurisdiction "to restrain violations of this section."  A violation of § 302
> occurs when . . . funds . . . are "pa[id], len[t], or deliver[ed]" to the trust
> fund [citation omitted], or when they are "receive[d], or accept[ed]" by the
> trust fund, or "request[ed] [or]demand[ed]" for the trust fund [citation
> omitted].

*Id.* at 587-588.  Violations occur "when payments to a nonqualifying trust are made or received."

*Id.* at 590.

In *Lipton v. Consumers Union,* 37 F. Supp.2d 241 (S.D.N.Y. 1999), Judge Kaplan

summarized *Demisay* as ruling that Section 302 "does not provide authority for a federal court to

issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in

the manner described in 302(c)(5)," quoting *Demisay,* 508 U.S. at 587, but rather only permitted

district courts to restrain violations of Section 302(a) and (b).  According to Judge Kaplan,

violations occur not when funds are administered by the trust fund but rather when funds are

paid, lent or delivered to the trust fund or when they are received or accepted or requested or

demanded by the trust fund.  "In other words, violations occur only when money is paid into the

trust; no violation occurs when money already in the trust is invested or otherwise administered."

*Lipton*, 37 F. Supp.2d at 245.  *Demisay* also does not bar contractual or fiduciary claims.  "The

trustees' failure to *comply* with the[] purposes [listed in Section 302(c)(5)] may be a breach of

their contractual or fiduciary obligations and may subject them to suit for such breach. . . . ."  *Id.*

at 588-589 (emphasis in original).[29]

---

[29] In Count I, plaintiffs assert a breach of contractual obligations, as permitted by the *Demisay* decision.  Since the Funds owe no fiduciary duty to plaintiffs under ERISA or federal labor law, plaintiffs do not have standing to assert fiduciary breaches.  Whether the Funds have engaged in certain fiduciary breaches is the subject of the participant lawsuit (*Martinez v. Barasch,* formerly *Bona v. Barasch*) pending before Chief Judge Mukasey that is cited in the Union's brief.

Furthermore, the distinction defendants make between the establishment of a fund and its operation or administration, while based on the language of *Demisay*, is a crabbed interpretation of the statute and not required by *Demisay*.  As several post-*Demisay* decisions have recognized, claims for violation of Section 302(c)(5) fall along a continuum, from those that clearly arise from the establishment or form of the trust and involve a core principle enunciated in the statute to those that involve micromanagement of trust and plan administration, such as the cases regarding the reasonableness of various vesting, service, and accrual rules.  *See, e.g., Mason Contractors Ass'n of America v. Int'l Council of Employers of Bricklayers & Allied Craftsmen*, 853 F. Supp. 515, 523 (D.D.C. 1994).  *Demisay* bars judicial micromanagement of funds and claims of breach of fiduciary duty under the rubric of preventing structural defects, but leaves open issues regarding the form and purpose of funds.  *Lipton*, 37 F. Supp.2d at 245-246.  A lack of jurisdiction over operation does not affect the court's power over a trust's establishment. "The *Demisay* court contrasted the two, and in excluding the first, impliedly included the second. . . . . [Federal] courts . . . do have jurisdiction over violations allegedly occurring when money is paid into a pension fund and over questions of the purposes for which a fund is established." *Id.* at 245.

Both defendants conveniently ignore the existence of other precedent within this Court holding that *Demisay* did not eliminate jurisdiction over all claims under Section 302(c)(5) and (e).  *Berdeguez v. United Brotherhood of Carpenters and Joiners of America*, 1996 W.L. 551722 (S.D.N.Y. Sept. 26, 1996) (Sand, J.).  According to Judge Sand, the Supreme Court in *Demisay* limited the scope of 302(e) to violations of 302(a) and (b), which prohibit payments by employers to employee representatives and the receipt of such payments by employee representatives.  In *Berdeguez*, the defendant fund contended that a claim of structural defect

under Section 302(c)(5) was no longer a viable federal claim.[30]  The Court responded that "it is

not clear that Demisay's reach was so broad," *id.* at *5, and distinguished between two

categories of challenges to funds under 302(c)(5): those that challenge the administration or

operation of an employee benefit fund, which are barred by *Demisay*, and those that attack a

fund's overall structure as established by the terms of the trust instrument.  Judge Sand

characterized *Demisay* as governing, and stripping the federal court of jurisdiction over, the

former category only.  To put it another way, the distinction is between the operation of the fund

and its form.  The complaint here relates to the form of the trust agreement.  While *Berdeguez*

addressed a challenge to a fund's initial structure, the fact that a defect in form may not stem

from the initial trust agreement, but may have been incorporated in a later amendment or

restatement, should not matter for this purpose.[31]

DeVito v. Hempstead China Shop, Inc., 38 F.3d 651 (2d Cir. 1994), cited by both

defendants, is irrelevant, as it deals solely with *Demisay's* elimination of the claim that the fund,

which had sued to collect delinquent contributions, was operated in a manner inconsistent with

Section 302(c)(5).  "[Defendant] does not contest that the Benefit Fund was properly established

under § 302(c)(5), but contends that it was subsequently operated in a manner inconsistent with §

302(c)(5).  *Demisay* precludes this argument."  38 F.3d at 653 n.3.  As is discussed above, that is

not the claim plaintiffs are making.  As the Second Circuit further notes in *DeVito*, a claim such

---

[30] "Structural defect" was the terminology courts applied to such claims prior to *Demisay*.

[31] This is not a concession that such is the case here, however.  Given the current state of the record, it is impossible
to tell whether the defects in form complained of date back to the initial trust agreements or not.

as the ones made here would likely be unavailing as a defense to a collection action anyway.[32]

38 F.3d at 653-654.

## II.   JOINDER OF THE NATIONAL LABOR RELATIONS BOARD AS A NECESSARY PARTY IS NOT REQUIRED

ATC has alleged that the NLRB is a necessary party under Rule 19(a) of the Federal

Rules of Civil Procedure who must be joined as a party.  Rule 19(a) of the Federal Rules of Civil

Procedure provides, in pertinent part:

> A person who is subject to service of process and whose joinder will not deprive
> the court of jurisdiction over the subject matter of the action shall be joined as a
> party in the action if (1) in the person's absence complete relief cannot be
> accorded among those already parties, or (2) the person claims an interest relating
> to the subject of the action and it is so situated that the disposition of the action in
> the person's absence may (i) as a practical matter impair or impede the person's
> ability to protect that interest or (ii) leave any of the persons already parties
> subject to a substantial risk of incurring double, multiple, or otherwise
> inconsistent obligations by reason of the claimed interest.

Rule 19(a) requires an absent party to be joined if that party's presence is necessary and

joinder is feasible.  Joinder is feasible when the absent party is subject to service and joining the

party would not deprive the court of jurisdiction.  *Caisse Nationale de Credit Agricole v. Bank of*

*Tokyo*, 1997 W.L. 282274, *3 (S.D.N.Y. May 28, 1997) (Leisure, J.)[33]  An examination of the

factors under Rule 19(b) is only required if the party is determined to be necessary under Rule

19(a).  *Caisse Nationale* at *3.  The factors listed in Rule 19(b) are used to determine whether a

party whose joinder is determined to be necessary under Rule 19(a) is indispensable and if so,

whether the case should be dismissed if joinder is not feasible.

---

[32] Somewhat ironically, the Court in *DeVito* went on to hold that the district court had improperly entered summary judgment in favor of the fund because the defendant employer had a valid argument that a condition precedent to its contribution obligation no longer existed, thus justifying its failure to contribute.

[33] The NLRB is subject to service and we know of no reason why its joinder would deprive the court of jurisdiction, as this case is brought under the provision for federal question jurisdiction.

The ATC's claim that the NLRB's joinder is necessary to afford complete relief under Rule 19(a)(1) is laughable.  This claim is based on the NLRB's alleged interest in having its order in the impasse case, *Duane Reade Inc.*, 342 NLRB No. 104 (Sept. 15, 2004), that Duane Reade "make whole the Vacation and Fringe Benefit Fund [sic], the Allied Welfare Fund and the Union Mutual Fund" enforced -- assuming, of course, that the D.C. Circuit decides to enforce it in its present form.  There are significant questions that arise from the order that would require a compliance hearing, such as whether Duane Reade is entitled to an offset for the amounts Duane Reade expended to provide alternative health and welfare coverage and pension benefits to its employees and to pay accrued vacation time.  Even though the commercial real estate development whose master agreement was the subject of the Second Circuit's opinion in *ConnTech Devlopment Co. v. University of Connecticut Education Properties, Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) was initiated and planned by the State of Connecticut, the Second Circuit held that the State of Connecticut was not a necessary party within the meaning of Rule 19(a) because it was not a party to the agreement, and hence its presence was not necessary to provide complete relief.  *Id.*  Similarly, the NLRB is not a party to the agreement at issue (although, like Connecticut, it may have an interest in the resolution of the dispute), and its presence is not necessary to provide complete relief, as any order this Court would enter would not require the NLRB to do anything.

With regard to the ATC's claim that the NLRB's joinder is required pursuant to Rule 19(a)(2), no determination in this case will as a practical matter impair or impede the NLRB's ability to protect its interests or leave any party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  The scenario ATC seems to be worried about is enforcement of that portion of the NLRB's order requiring

payment of Fund contributions retroactive to the expiration of the 1998 CBA conflicting with an order of this Court enjoining Duane Reade from making contributions to the Funds, enjoining the Funds from demanding or receiving such contributions, and enjoining the ATC from any action to require such contributions, until such time as the Funds are reformed.  In effect, the NLRB would be determining the existence and amount of the liability, and the Court would be imposing a condition on the actual contributions.

In the first place, such a scenario would not affect the NLRB directly, as the NLRB's interest is derivative.  The parties whose interests are really being asserted are the Funds, the recipients of the contributions.  As the NLRB is not a party to the collective bargaining agreement at issue here, it is not a necessary party. A non-party to a contract ordinarily is not a necessary party to an adjudication of rights under the contract, even if the absent party is the government or a government agency.  *ConnTech, supra,* 102 F.3d at 682; *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043-1044 (9th Cir.), *cert. denied*, 464 U.S. 849 (1983) cited in *ConnTech*; *see Int'l Union of Operating Engineers, Local 103 v. Irmscher & Sons, Inc.*, 63 F.R.D. 394, 398 (N.D. Ind. 1973) (a subcontractor who is not a party to the collective bargaining agreement at issue is not a necessary party in litigation over the application of an arbitration clause to a dispute arising from the employer's use of the subcontractor).

This case does not raise the possibility that the defendant could be subject to conflicting arbitration orders as in *Window Glass Cutters League of America v. America St. Gobain Corp.*, 428 F.2d 353 (3d Cir. 1970)*,* and as is described above, it is difficult to see how defendant could be subject to inconsistent obligations.  *ConnTech,* 102 F.3d at 682**;** s*ee also Bodner v. Banque Paribas*, 114 F. Supp.2d 117, 136-138 (E.D.N.Y.) (potential complicity of French and German governments in spoilation of assets belonging to Jewish residents does not mandate their

joinder, as complete relief can be afforded without their participation).  The possibility of harm to the absent party has not been demonstrated.  As Judge Carter noted in an antitrust case brought against the National Basketball Association by several well-known professional basketball players objecting to the reserve clause, player draft, and uniform contracts, "The mere fact that a decision in this case could conceivably affect the [Players] Association [the union representing NBA basketball players] does not automatically require its joinder."  *Robertson v. NBA*, 389 F. Supp. 867, 879 (S.D.N.Y. 1975).

The cited case of *Bridges v. Blue Cross and Blue Shield Ass'n*, 889 F. Supp. 502, 504 (D.D.C. 1995), which ordered the Office of Personnel Management, under whose auspices, regulations, and supervision the Blue Cross and Blue Shield Service Benefit Plan was provided to federal employees, joined as a defendant in a lawsuit brought by participants in the plan alleging that Blue Cross and Blue Shield surreptitiously contracted with health care providers for discounts on the amounts paid by Blue Cross and BlueShield which were not applied to the amounts to be paid by employees, thus causing the employees to pay excessive coinsurance, is not to the contrary.  The Office of Personnel Management had a more direct interest in the functioning of a benefit plan it designed and offered, and over which it was negotiating with the insurer to remedy the very practices of which plaintiffs complained, than the NLRB has with regard to the timing and conditions of contributions to the Funds, over which the NLRB has no direct supervisory authority.

For an interest claimed by a third party to suffice for purposes of Rule 19(a)(2), it must be a legal interest, not merely a financial interest.  *Caisse Nationale de Credit Agricole v. Bank of Tokyo*, 1997 W.L. 282274 (S.D.N.Y. 1997) (citing *Conntech Dev. Co., Northrop Corp., and Moore's Federal Practice); accord Burger King Corp. v. American National Bank and Trust*

*Co.*, 119 F.R.D. 672, 677 & n. 2 (N.D. Ill. 1988) (in an action for wrongful transfer, the transferee is a necessary party if the relief sought requires return of the property or otherwise affects the transferee's property interest, but is not a necessary party if the action solely seeks damages); *Gould v. Lumonics Research Ltd.*, 495 F. Supp. 294, 296 (N.D. Ill. 1980) (denying motions for dismissal or joinder of assignee because assignee only had a right to receive income from a patent, not an ownership interest).

By defendant's own admission, any interest the NLRB might have in this case is a derivative financial interest in ensuring that the Funds receive the contributions the NLRB has ordered.  Unlike *Burger King*, in this case, the NLRB's rights will not be affected irrespective of the outcome.  Any inconsistent judicial directives would affect plaintiffs and/or the Funds, not ATC, so ATC has no standing to raise the issue.  *Cf. Marathon Int'l Petroleum Supply Co. v. I.T.I. Shipping, S.A.*, 740 F. Supp. 984, 987 (S.D.N.Y. 1990) (a desire to seek indemnification from the third party does not make that party an indispensable party).

Moreover, the possibility of alleged inconsistent obligations is highly speculative.  As the court stated in *Solvent Chemical Co. v. DuPont*, 242 F. Supp.2d 196, 220 (W.D.N.Y. 2002), "DuPont's contention that it may be subject to inconsistent obligations is speculation at this point" because relief could be ordered that would be adequate for plaintiffs without requiring the agency (in the *DuPont* case, the New York State Department of Environmental Conservation) to be joined.  As the Eastern District of New York has observed regarding joinder of the French government in a case seeking restoration or payment for assets confiscated from Jewish citizens by the Nazis,

> Defendants have highlighted the possibility of redress-oriented obligations set by the French government conflicting with any judgment by this Court [citation omitted].  At this time, the Court finds the possibility of such conflict remote and speculative at best.  Speculative assertions over future . . . prospects will not render the French government necessary to this action [citation omitted]. . . . This Court finds the possibility that defendants will be subject to multiple or inconsistent obligations absent joinder highly speculative and remote in the extreme.

*Bodner*, 114 F. Supp.2d at 138.  The Ninth Circuit concluded in *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030 (9th Cir. 1983), "Speculation about the occurrence of a future event ordinarily does not render all parties potentially affected by that future event necessary or indispensable parties under Rule 19 [citations omitted].  The Government is not a necessary party to what is essentially a contract and antitrust action between private parties solely because the dispute arises in the regulated military aircraft industry." *Id.* at 1046.[34]

Joinder is also not required if the absent party's interest is fully represented by the present parties.  *Burger King*, 119 FRD at 678.  An existing party may adequately represent the interests of an absent party if (1) the present party will undoubtedly make all of the absent party's arguments; (2) the present party is capable and willing to make the absent party's arguments; and (3) the absent party would not offer any necessary elements that the present parties would neglect.  *Artichoke Joe's v. Norton*, 216 F. Supp.2d 1084, 1118-1119 (E.D. Cal. 2002), *aff'd*, 353 F.3d 712 (9th Cir. 2003), *cert. denied*, 125 S.Ct. 51 (2004), *citing Shermoen v. US*, 982 F.2d 1312 (9th Cir. 1992), *cert. denied*, 509 U.S. 903 (1993), which held that in the absence of an actual conflict of interest, the Secretary of the Interior adequately represents the interests of non-party Indian tribes; *see also Robertson v. NBA*, 389 F. Supp. at 879 (no reason to add union representing professional basketball players to a dispute between certain players, owners, and the

---

[34] Furthermore, if anyone were to be subject to the risk of incurring inconsistent obligations, it would be Duane Reade, not the Funds or the NLRB.

league, when it appears that the plaintiffs will adequately represent the union's interests). Here, the Funds and ATC will adequately represent whatever interest the NLRB would have.

Courts also frequently consider the failure of an absent party to seek intervention as a factor mitigating against the necessity of joinder. In *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043-1044 (9th Cir. 1983), the court noted that the federal government, which the defendant had proposed to add as a necessary party, has taken a neutral posture and advised the parties to resolve their differences; and defendant has offered "no cogent reason why we should second-guess the Government's assessment of its own interests" and add it as a party, even though the government prompted the parties to enter into the agreements at issue and exerts considerable influence on the parties and the agreements.

Even if it is determined that at least one of the Rule 19(a) requirements are met, that does not automatically mean that joinder or dismissal is required. Rule 19(b) of the Federal Rules of Civil Procedure provides:

> If a person as described in subdivision (a)(1)-(2) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include:  first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The four factor analysis mandated by Rule 19(b) to a large extent overlaps that required by Rule 19(a). However, unlike Rule 19(a), Rule 19(b) permits a pragmatic weighing of the relevant factors. *Burger King*, 119 F.R.D. at 679. The first Rule 19(b) factor is a counterpart to Rule 19(a)(2)(i), and if that is a basis for concluding that an absent party is a necessary party, it is

also a factor weighing in favor of joinder (or dismissal, if joinder is not feasible). *Id.* However, in this case, Rule 19(a)(2)(i) does not apply, so this is inapplicable. Similarly, the third 19(b) factor – whether a judgment in the party's absence will be adequate – tracks the requirements of Rule 19(a)(1). As is described above, although defendant alleges it, Rule 19(a)(1) is of no relevance here because complete relief can be afforded without the NLRB's participation.[35] The second factor requires the court to consider whether the relief provided in the case could be shaped so as to mitigate its effect on the absent party. Such mitigation or modification could certainly be undertaken here, and the NLRB order taken into account. Finally, the last factor instructs the court to consider whether an adequate forum and remedy are available to plaintiff if the suit is dismissed. Since Duane Reade has no standing or jurisdiction to sue under ERISA, there would be no adequate remedy if the action is dismissed for nonjoinder. *Tuvia Convalescent Center, Inc. v. National Union of Hospital and Health Care Employees*, 717 F.2d 726, 729-730 (2d Cir. 1983).

---

[35] In fact, defendant's argument is more that complete relief in favor of plaintiffs in this case will have the tendency to frustrate or undermine the relief in favor of the Funds contained in the NLRB's order.

## CONCLUSION

For the foregoing reasons, defendant ATC's motion to dismiss should be denied.

Respectfully submitted,

GROTTA, GLASSMAN & HOFFMAN, P.C.

Dated: January 28, 2004

By: s/_____
CHERYL J. WELLER (CJW 1326)
Attorney for Plaintiffs
650 Fifth Avenue, 22nd Floor
New York, New York  10019
(212) 315-3510

Of Counsel:
Craig R. Benson, Esq.

CERTIFICATE OF ELECTRONIC SERVICE

STATE OF NEW JERSEY    )
                            ) ss.:
COUNTY OF ESSEX       )

       Cheryl J. Weller hereby certifies and affirms:

       I am not a party to this action and am over 18 years of age. On the 28th day of January, 2005, I electronically filed the within Plaintiffs' Memorandum of Law in Opposition to Fund Defendants' Motion to Dismiss with the Court and served it upon counsel for defendants pursuant to the Court's rules and guidelines regarding Electronic Case Filing.


                                        S/_____
                                        CHERYL J. WELLER